IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JACK PIDGEON and | § | |
| LARRY HICKS | § | |
| | § | |
| *Plaintiffs,* | § | |
| v. | § | |
| | § | **C. A. NO. 4:18-CV-00675** |
| SYLVESTER TURNER, | § | |
| in his official | § | |
| capacity as Mayor of | § | |
| the City of Houston, | § | |
| and CITY OF HOUSTON | § | |
| | § | |
| *Defendants.* | § | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS'
APPLICATION FOR ATTORNEYS' FEES,
AND MOTION FOR RECONSIDERATION**

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS .................................................................ii

TABLE OF AUTHORITIES ........................................................ iv

I.   NATURE AND STAGE OF THE PROCEEDINGS ......................... 1

II.  ISSUES TO BE RULED UPON BY THE COURT ............................ 1

III. SUMMARY OF THE ARGUMENT ................................................ 2

IV.  ARGUMENT ...................................................................................... 2

A.   Courts apply the lodestar method in determining an award of
     attorneys' fees under 28 U.S.C. § 1447(c). ............................................. 2

B.   The hourly rates sought by Plaintiff's counsel Jonathan Mitchell
     are excessive. ............................................................................................. 4

C.   The number of hours for which Plaintiff seeks compensation is
     also unreasonable and excessive. ........................................................ 10

     1.   Plaintiffs' Fee Request Should Be Reduced for Overstaffing
          Unproductive or Unnecessary Hours. ........................................ 10

     2.   The fee request should be reduced for work that could be
          performed by non-attorneys, and clerical and administrative
          tasks are part of overhead and should not be billed. ................... 14

     3.   Plaintiffs have failed to exercise billing judgment in their fee
          request. ......................................................................................... 15

D.   Application of the Johnson Factors.................................................... 16

E.   Motion for Reconsideration............................................................... 17

     1.   The City had an objectively reasonable basis for concluding
          that its removal was timely.......................................................... 18

2.   The City had an objectively reasonable basis for concluding that issue and claim preclusion did not apply or were not satisfied with regard to their grounds for removal. .................... 20

3.   The City had an objectively reasonable basis to conclude that plaintiffs' amended pleading and "other papers" presented a question of federal and/or constitutional law. ......... 23

V.   CONCLUSION ................................................................ 24

CERTIFICATE OF CONFERENCE ......................................... 26

CERTIFICATE OF SERVICE ................................................. 27

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abrams v. Baylor Coll. of Med.*,
  805 F.2d 528 (5th Cir. 1986) ............................................................ 11

*Allen v. McCurry*,
  449 U.S 90 (1980)............................................................................ 20

*Avitts v. Amoco Prod. Co.*,
  111 F.3d 30 (5th Cir. 1997), *cert. denied*, 522 U.S. 977 (1997)...................... 3

*Blanco v. Equable Ascent Fin., LLC*,
  No. EP-12-CV-134-PRM, 2012 WL 2155005 (W.D. Tex. June 13,
  2012) ...................................................................................... 13, 17

*Block C S. Tower Residences Condo. Residential Ass'n, Inc. v. Blackburn*,
  No. 3:15-CV-1156-L-BH, 2016 WL 791046 (N.D. Tex. Feb. 11,
  2016) ...................................................................................... 13, 17

*Brown v. Felsen*,
  442 U.S. 127 (1979) ........................................................................ 20

*Browning v. Navarro*,
  743 F.2d 1069 (5th Cir. 1984)............................................................. 21

*Charles v. Viator*,
  No. 10-1726, 2011 WL 1085008 (W.D. La. March 23, 2011).............. 13, 17

*Coleman v. Houston Indep. School Dist.*,
  202 F.3d 264 (5th Cir. 1999) ............................................................... 5

*Davis v. Bd. Of Sch. Comm'rs of Mobile Cty.*,
  526 F.2d 865 (5th Cir. 1976) ............................................................... 5

*Decatur Hosp. Auth. v. Aetna Health, Inc.*,
  854 F.3d 292 (5th Cir. 2017) ........................................................... 1, 17

*Deltatech Constr., LLC v. The Sherwin-Williams Co.*,
  No. 04-2890, 2005 WL 3542906 (E.D. La. Nov. 3, 2005) ........................... 5

iv

*DZ Bank AG Deutsche Zentral-Genossenschaftsbank v. Cornette Invs., LLC*,
No. SA:13-CV-468-XR, 2013 WL 4854392 (W.D. Tex. Sept. 11,
2013) ................................................................................................. 6

*Fin. Cas. & Sur., Inc. v. Parker*,
No. H-14-0360, 2015 WL 6684552 (S.D. Tex. Nov. 2, 2015) .................... 6

*Fiume Indus., Inc. v. Am. Express Travel Related Servs. Co., Inc.*,
No. 4:09-CV-591, 2009 WL 4667542 (S.D. Tex. Dec. 1, 2009) ........... 14, 16

*Garcia v. Amfels, Inc.*,
254 F.3d 585 (5th Cir. 2001) .................................................................. 1

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
545 U.S. 308 (2005) ............................................................................. 23

*Green v. Adm'rs of Tulane Educ. Fund*,
284 F.3d 642 (5th Cir.2002), *abrogated on other grounds, Burlington N. &
Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ........................................ 5, 9

*Halliburton Latin Am. SA v. Int'l Tech. Sols.*,
No. 00-20842, 2001 WL 1013047 (5th Cir. July 1, 2001) ......................... 3

*Hensley v. Eckherhart*,
461 U.S. 424 (1983) ............................................................................... 3

*Hoffman v. L&M Arts*,
No. 3:10-CV-0953-D, 2015 WL 3999171 (N.D. Tex. July 1, 2015) ............ 6

*Hopkins v. Walker*,
244 U.S. 486 (1917) ............................................................................. 23

*Hopwood v. State of Tex.*,
236 F.3d 256 (5th Cir. 2000).................................................................. 9

*Jiwani v. United Cellular, Inc.*,
No. 3:13-CV-4243-M-BK, 2014 WL 4805781 (N.D. Tex. Sept. 29,
2014) ................................................................................................... 6

*Johnson v. Ga. Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974), *overruled on other grounds*, *Blanchard v.
Bergeron*, 489 U.S. 87 (1989) ........................................................ 4, 14, 16

*La. Power & Light Co. v. Kellstrom*,
   50 F.3d 319 (5th Cir. 1995), *cert. denied*, 516 U.S. 862 (1995)................3, 10

*Leroy v. City of Houston*,
   906 F.2d 1068 (5th Cir. 1990)................................................................... 5

*Lott v. Pfizer, Inc.*,
   492 F.3d 789 (7th Cir. 2007) ..........................................................19, 20

*Lotte Chem. Titan (M) Sendirian Berhad v. Wilder*,
   No. H-14-1116, 2014 WL 7151569 (S.D. Tex. Dec. 12, 2014)..............5, 17

*Martin v. Franklin Capital Corp.*,
   546 U.S. 132 (2005) .......................................................................17, 18

*McMullen v. Cain*,
   No. A-16-CA-716-LY, 2016 WL 4703753 (W.D. Tex. 2016) ................... 17

*Meyerland Co. v. F.D.I.C.*,
   848 S.W.2d 82 (Tex. 1993)................................................................... 19

*Nat'l Collegiate Student Loan Tr. 2006-3 v. Richards*,
   No. 3:16-CV-001936-M, 2017 WL 3017231 (N.D. Tex. June 14,
   2017) ..................................................................................6, 13, 15, 16

*One Sylvan Rd. N. Assocs. v. Lark Int'l, Ltd.*,
   889 F. Supp. 60 (D. Conn. 1995)........................................................... 21

*Oviedo v. Hallbauer*,
   655 F.3d 419 (5th Cir. 2011) ............................................................... 19

*Pidgeon v. Parker*,
   46 F. Supp. 3d 692 (S.D. Tex. 2014)..................................................... 22

*Reyes v. Spur Discount Store No. 4*,
   No. 07-2717, 2007 WL2571905 (E.D. La. Aug. 31, 2007) ........... 12, 15, 17

*Riley v. City of Jackson*,
   99 F.3d 757 (5th Cir. 1996) ................................................................... 3

*S.W.S. Erectors, Inc. v. Infax, Inc.*,
   72 F.3d 489 (5th Cir. 1996) ............................................................20, 21

*Strong v. Bellsouth Telecommc'ns, Inc.*,
    137 F.3d 844, 850 (5th Cir. 1998) ............................................................. 3

*Thermotek, Inc. v. Orthoflex, Inc.*,
    Nos. 3:11-CV-870-D, 3:10-CV-2618-D, 2016 WL. 6330429 (N.D.
    Tex. Oct. 27, 2016) ................................................................................. 6

*Tollet v. City of Kemah*,
    285 F.3d 357 (5th Cir. 2002) ................................................................... 4

*Tovar v. Kaplan Higher Educ. Corp.*,
    481 F. Supp. 2d 751 (W.D. Tex. 2007) .................................................. 20

*Valdes v. Wal-Mart Stores, Inc.*,
    199 F.3d 290 (5th Cir. 2000) ............................................................17, 18

*Victoria Palms Resort v. City of Donna*,
    234 Fed. App'x 179 (5th Cir. 2007) .............................................. 1, 18, 19

*Walker v. U.S. Dep't of Hous. & Urban Dev.*,
    99 F.3d 761 (5th Cir. 1996) ..............................................................12, 15

*Weaver v. Zurich Ins. Co.*,
    CIV.A. 4:11-1095, 2011 WL 4007883 (S.D. Tex. Sept. 7, 2011)............... 21

*Wolf v. Kennedy*,
    574 F.3d 406 (7th Cir. 2009) ................................................................. 17

## Statutes

28 U.S.C. § 1447 ..................................................................................... 2, 3

Defendants Sylvester Turner, in his official capacity as Mayor of the City of Houston ("Mayor Turner"), and the City of Houston ("Houston" or the "City") (collectively, the "Defendants") file this Response to Plaintiffs' Application for Attorneys' Fees (Dkt 19 and 20), and Motion for Reconsideration, and respectfully show the Court the following:

## I.      NATURE AND STAGE OF THE PROCEEDINGS

On March 2, 2018, Defendants removed this case from 310th District Court of Harris County, Texas to this Court. On April 10, 2018, this Court ordered the case remanded and ruled that the Plaintiffs were entitled to recover attorneys' fees. (*See* Dkt 17).

## II.     ISSUES TO BE RULED UPON BY THE COURT

1. Are the attorneys' fees sought by Plaintiffs excessive under the lodestar method?

2. Did Defendants have objectively reasonable grounds for removing under *Victoria Palms Resort v. City of Donna*, 234 Fed. App'x 179 (5th Cir. 2007) and the *Grable/Singh* line of cases?

**Standard of Review:** A decision of the district court to award attorneys' fees under 28 U.S.C. § 1447(c) following remand of a removed proceeding is reviewed for abuse of discretion. *See Decatur Hosp. Auth. v. Aetna Health, Inc.*, 854 F.3d 292, 297-98 (5th Cir. 2017); *Garcia v. Amfels, Inc.*, 254 F.3d 585, 587 (5th Cir. 2001).

## III.   SUMMARY OF THE ARGUMENT

Plaintiffs' request for attorneys' fees is excessive under the lodestar method used to calculate a reasonable attorneys' fees award for improper removal under 28 U.S.C. § 1447(c). The hourly rate requested for Plaintiffs' primary attorney is more than double the prevailing hourly rate for appellate and commercial litigation practitioners in the Houston metropolitan area. The billable hours claimed for work on the remand and fee application are likewise excessive—Plaintiffs are claiming triple the billable hours awarded under Section 1447(c) by other courts in this circuit. Plaintiffs have also sought fees for duplicative and unnecessary work, and for administrative tasks in the nature of overhead which are, therefore, not billable. Finally, Defendants respectfully request that the Court reconsider its decision to award attorneys' fees in connection with the removal of this case, as Defendants had objectively reasonable grounds for removal under applicable Fifth Circuit and U.S. Supreme Court case law.

## IV.   ARGUMENT

### A.   Courts apply the lodestar method in determining an award of attorneys' fees under 28 U.S.C. § 1447(c).

Under 28 U.S.C. § 1447(c), a court may award costs and expenses, including attorneys' fees, incurred as a result of removal. 28 U.S.C. § 1447(c). The statute permits the award only of "fees and costs incurred in federal court

that would not have been awarded had the case remained in state court." *Avitts v. Amoco Prod. Co.*, 111 F.3d 30, 32 (5th Cir. 1997), *cert. denied*, 522 U.S. 977 (1997); *see* 28 U.S.C. § 1447(c).

In adjudicating an attorneys' fees award for an improper removal under § 1447(c), a court first calculates a "lodestar" fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers.[1]

Initially, the district court must determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating lawyers. Then, the district court must multiply the reasonable hours by the reasonable hourly rates. The product of this multiplication is the lodestar, which the district court then either accepts or adjusts upward or downward, depending on the circumstances of the case. *Kellstrom*, 50 F.3d at 324. The party requesting attorneys' fees has the burden to demonstrate entitlement to the fees and to document the hours expended and the hourly rate. *Id. See also Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996).

---

[1] *See Hensley v. Eckherhart*, 461 U.S. 424, 433 (1983); *Halliburton Latin Am. SA v. Int'l Tech. Sols.*, No. 00-20842, 2001 WL 1013047, at *1 (5th Cir. July 1, 2001) (per curiam) (unpublished) (lodestar method and *Johnson* factors should be used to determine attorneys' fees for an improper removal under § 1447(c)); *Strong v. Bellsouth Telecommc'ns, Inc.*, 137 F.3d 844, 850 (5th Cir. 1998); *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995), *cert. denied*, 516 U.S. 862 (1995).

In the second step of the lodestar method, the court must consider whether the lodestar figure should be adjusted upward or downward depending on its analysis of the twelve factors established in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other grounds*, *Blanchard v. Bergeron*, 489 U.S. 87 (1989). Those factors are: (1) the time and labor involved; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of counsel; (10) the undesirability of the case; (11) the nature and length of the professional relationship between the attorney and the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

## B.   The hourly rates sought by Plaintiff's counsel Jonathan Mitchell are excessive.

A primary step in computing the lodestar is determining a reasonable hourly rate. The prevailing market rate for similar services by similarly trained and experienced lawyers in the relevant legal community is the established basis for determining a reasonable hourly rate. *Tollet v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). To establish the reasonableness of the requested rate, counsel "must produce satisfactory evidence—in addition to [her] own

4

affidavits—that the requested rates are in line with those prevailing in the community for similar service by lawyers of reasonably comparable skill, experience, and reputation." *Deltatech Constr., LLC v. The Sherwin-Williams Co.*, No. 04-2890, 2005 WL 3542906, at *3 (E.D. La. Nov. 3, 2005). In addition, the court may use its own expertise and judgment to make an appropriate independent assessment of the value of an attorney's services. *Davis v. Bd. Of Sch. Comm'rs of Mobile Cty.*, 526 F.2d 865, 868 (5th Cir. 1976).

"A reasonable hourly rate is determined with reference to the prevailing market rate in the relevant legal community for similar work. . . . While the hourly rate must be 'adequate to attract competent counsel,' the 'measure is not the rates which lions at the bar may command.'"[2] "The relevant legal community is the one in which the district court sits, no matter how much of the work is done elsewhere."[3]

In determining a reasonable hourly rate, many federal courts in Texas have considered or have taken judicial notice under Fed. R. Evid. 201 of the

---

[2] *Coleman v. Houston Indep. School Dist.*, 202 F.3d 264 at *3 (5th Cir. 1999) (unpublished opinion available on Westlaw) (citing *Leroy v. City of Houston*, 906 F.2d 1068, 1079 (5th Cir. 1990). *See also Lotte Chem. Titan (M) Sendirian Berhad v. Wilder*, No. H-14-1116, 2014 WL 7151569, at *2 (S.D. Tex. Dec. 12, 2014).

[3] *Lotte Chem.*, 2014 WL 7151569, at *2 (citing *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 662 (5th Cir.2002), *abrogated on other grounds, Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).

State Bar of Texas's Hourly Rate Fact Sheet (the "Fact Sheet"), "which includes hourly rates based on experience, practice area, and geographic region." *Nat'l Collegiate Student Loan Tr. 2006-3 v. Richards*, No. 3:16-CV-001936-M, 2017 WL 3017231, at *5 (N.D. Tex. June 14, 2017) (unpublished opinion).[4] Courts have found it appropriate to take judicial notice of the Fact Sheet under Fed. R. Evid. 201 to consider the reasonableness of Plaintiff's requested hourly rate. *See id.*; *Parker*, 2015 WL 6684552, at *5.

The Fact Sheet reflects that the median hourly rate in the Houston metropolitan area for attorneys practicing commercial litigation was $295, and for appellate practitioners was $325. Dkt 20-18, at pp. 15, 16 of 30. The median hourly rate for out-of-state appellate attorneys was $198, and $320 for commercial litigation attorneys. *Id.* The median hourly rate for all attorneys in the Houston-Woodlands-Sugarland metropolitan statistical area was $275. Dkt 20-18, at p. 14 of 30. Median hourly rates for Houston area attorneys in the practice areas of family law, government/administrative law, insurance law,

---

[4] *See, e.g.*, *Thermotek, Inc. v. Orthoflex, Inc.*, Nos. 3:11-CV-870-D, 3:10-CV-2618-D, 2016 WL 6330429, at *8 & n.14 (N.D. Tex. Oct. 27, 2016) (considering Fact Sheet as a basis for determining a reasonable hourly rate); *Hoffman v. L&M Arts*, No. 3:10-CV-0953-D, 2015 WL 3999171, at *2, n.4 (N.D. Tex. July 1, 2015) (same); *Fin. Cas. & Sur., Inc. v. Parker*, No. H-14-0360, 2015 WL 6684552, at *5 & n.5 (S.D. Tex. Nov. 2, 2015) (taking judicial notice of the Fact Sheet); *Jiwani v. United Cellular, Inc.*, No. 3:13-CV-4243-M-BK, 2014 WL 4805781, at *5-6 (N.D. Tex. Sept. 29, 2014) (same); *DZ Bank AG Deutsche Zentral-Genossenschaftsbank v. Cornette Invs., LLC*, No. SA:13-CV-468-XR, 2013 WL 4854392, at *4 (W.D. Tex. Sept. 11, 2013) (same).

and labor-employment law were $260, $250, $200, and $285, respectively. Dkt 20-18, at p. 16 of 30. The median hourly rate for Houston attorneys practicing 16 years or more was $300. Dkt 20-18, at p. 9 of 30.

Here, Plaintiffs seek a billing rate of $695 per hour for California attorney Jonathan Mitchell's services, $275 per hour for attorney Jonathan Saenz's services, $350 per hour for attorney Lief Olson's services, and $325 per hour for attorney Jared Woodfill's services. Only the requested hourly rates for Mr. Saenz, Mr. Olson, and Mr. Woodfill appear near the Texas State Bar's research and analysis on prevailing rates in the Houston metropolitan area. The rate requested by Mr. Mitchell is an extreme outlier, and is not justified by any of the explanations proffered for the exorbitant rate.

First, Mr. Mitchell compares his rates to former Solicitor General, now Senator Ted Cruz. However, the Cruz billing records submitted by Plaintiffs (Dkt 20-8) establish that the work performed on the Motion to Remand was in no way similar to the services performed by Mr. Cruz. First, the Cruz billing records establish that Mr. Cruz was performing services in the nature of legislative advice, an area in which only a small subset of attorneys practices, and not the practice area required for the motion to remand. *See* Dkt 20-8, at p. 2 of 8. Second, the services were provided to the Republican Conference of the Texas Senate, not to two individuals, as is the case here. Attorneys can

7

command higher rates when performing services for corporations and institutions than when performing services for individuals. Third, Mr. Cruz was a partner with Morgan Lewis, an international law firm with offices in North America, Asia, Europe, and the Middle East. (*See* **Exhibit 1**). According to the State Bar of Texas Fact Sheet, the only attorneys with a median hourly rate above $400 were those in law firms of over 400 attorneys. Solo practitioners and attorneys in firms of up to 100 lawyers did not reach a median hourly rate above $300. Dkt 19-8, at p. 19 of 30.

Similarly, Plaintiffs' submission of an article regarding soaring Texas legal rates is inapposite. The article refers to corporate firms raising rates for business clients—not, as is the case here, hourly rates for individual litigants. It also contains a sampling of Houston's "highest-priced lawyers"—not, as is the lodestar standard, consideration of a reasonable hourly rate. As discussed above, Texas federal courts have generally determined median hourly rates to be reasonable. Additionally, a brief examination of the "highest-priced lawyers" indicates that all but three (high stakes trial lawyers Steve Susman, Mark Lanier, and Tom Melsheimer) are in the corporate and financial practice areas, maintaining practices in mergers and acquisitions, energy infrastructure, capital markets transactions, cross-border transactions, and other similar areas which

are not comparable to the case before this Court, and in particular, to the motion to remand. (*See* **Exhibit 2**).

Finally, a comparison to the rates of Professor Eric Schnapper in the *Zamora* case is likewise inapposite. *See* Dkt 20, at p. 5. In *Zamora,* Plaintiffs were seeking attorneys' fees for briefing before the United States Supreme Court. *See Zamora v. City of Houston*, C.A. No. 4:07-CV-04510, In the United States District Court for the Southern District of Texas, Houston Division, Dkt 437, pp. 5, 16 of 22. Professor Schnapper, a frequent practitioner before the United States Supreme Court, was engaged for the sole purpose of assisting in preparing the opposition to a petition for *certiorari* to the Supreme Court. *Id.* Here, the issue before this Court is the reasonable hourly rate in Houston, Texas to prepare a motion to remand. A rate of $695 is far outside a reasonable hourly rate for such a motion.

As the Fifth Circuit Court of Appeals has explained, "[h]ourly rates are to be computed according to the prevailing market rates in the relevant legal market, *not* the rates that lions at the bar may command." *Hopwood v. State of Tex.*, 236 F.3d 256, 281 (5th Cir. 2000) (emphasis supplied). Furthermore, the relevant legal community is the one in which the district court sits, no matter how much of the work is done elsewhere—in this case, California. *Green*, 284 F.3d at 662. Therefore, even assuming that California attorney rates may be

higher than those in Houston, the appropriate measure of a reasonable hourly rate is the prevailing rate within the relevant community, Houston. Accordingly, Defendants submit that an hourly rate of $350 is more than generous. $350 is higher than the median hourly rate for both appellate attorneys and commercial litigation attorneys, and higher than the median rate for attorneys with over twenty years experience.

## C.  The number of hours for which Plaintiff seeks compensation is also unreasonable and excessive.

Next in the lodestar analysis, the court must determine the number of hours reasonably expended on the litigation. Compensable hours, reasonably spent, are determined from the attorney's time records or other documentation which the district court must examine and discern *which hours are compensable and which are not. Kellstrom*, 50 F.3d at 324. Counsel must "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . . ." *Id.* In dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application. *Id.*

### 1.  Plaintiffs' Fee Request Should Be Reduced for Overstaffing Unproductive or Unnecessary Hours.

"[I]f more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized. The time

of two or three lawyers in a courtroom or conference when one would do may be obviously discounted." *Abrams v. Baylor Coll. of Med.*, 805 F.2d 528, 536 (5th Cir. 1986).

In this instance, Plaintiff is seeking fees for four different attorneys. Certainly, the City should not have to pay for the involvement of three attorneys from three different firms and a law professor. Based on the time entries submitted by all of the attorneys, it appears that many of the hours for which fees are requested were duplicative, unnecessary, or were unrelated to the motion for remand.

First, the fee application declaration of Mr. Leif Olson (Dkt 19-16) makes clear that at least .3 hours was spent, not on the motion to remand, but in responding to a request by Mr. Mitchell for information about federal-court TRO proceedings. Because the work was unrelated to the motion to remand, it should not be included in any award of attorneys' fees. *See* Dkt 19-16, p. 3 of 4, ¶ 6.

The description of work performed by Jared Woodfill on the Pidgeon remand proceedings (Dkt 19-15) indicates that Mr. Woodfill participated in a telephone call with Mr. Mitchell and Mr. Saenz to discuss response strategy. The other two hours spent by Mr. Woodfill consisted of reviewing the motion to remand drafted by Mr. Mitchell, and reviewing the defendants' response to

the motion to remand. There is no indication of any input or revisions made by Mr. Woodfill. Mr. Woodfill's review of pleadings is duplicative of work performed by Mr. Mitchell, and should not be included in any attorneys' fees award.

The work performed by Mr. Saenz should be disallowed in its entirety. It consists entirely of receiving and reviewing email correspondence, reviewing the notice of removal, and sending email correspondence to schedule a call on remand strategy, and a telephone conference to discuss the removal response. Each of the items, with the exception of scheduling the phone call, is duplicative of work performed by other attorneys. The scheduling of the telephone conference should be disallowed as it is clerical in nature. Services that are administrative or clerical in nature are considered overhead and should not be considered when awarding attorneys' fees. *See Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 770-71 (5th Cir. 1996); *Reyes v. Spur Discount Store No. 4*, No. 07-2717, 2007 WL2571905, at *3 (E.D. La. Aug. 31, 2007) (court should consider whether the work performed was legal work in a strict sense or was merely clerical work that happened to be performed by a lawyer.)

Mr. Mitchell's claim for attorneys' fees for the remand motion is clearly excessive. Mr. Mitchell is asking this Court for fees spanning 71.2 hours, of which 32.8 hours were spent drafting the motion to remand, and 17.9 were spent

working on a reply brief that was never filed. *See* Dkt 20-5, at pp. 3, 4. The remaining 20.5 hours were spent working on the fee application (including calls to friends and lawyers about how to prepare a fee application) and drafting notices of appearance and pro hac vice motions for the other lawyers.

In contrast to the 71.2 billable hours that Plaintiffs request, federal courts have found that between six and twenty-five total hours for *all* attorneys for combined motion to remand, reply brief, and fee application were reasonable. *See, e.g.*, *Richards*, 2017 WL 3017231, at *6 (approving 21 hours for remand and two hours for application for attorneys' fees, but reducing amount by 15% for billing judgment); *Block C S. Tower Residences Condo. Residential Ass'n, Inc. v. Blackburn*, No. 3:15-CV-1156-L-BH, 2016 WL 791046, at *2 (N.D. Tex. Feb. 11, 2016) (approving fee request for 2.7 hours at a rate of $250 per hour, 1.4 hours at a rate of $180 per hour, 12.1 hours at a rate of $140 per hour, and .9 hours at a rate of $110 for motion for remand, and 8.1 hours at a rate of $140 for fee application); *Blanco v. Equable Ascent Fin., LLC*, No. EP-12-CV-134-PRM, 2012 WL 2155005, at *3 (W.D. Tex. June 13, 2012) (finding request for sixty-one billable hours excessive for motion to remand, and reducing billable hours to twenty); *Charles v. Viator*, No. 10-1726, 2011 WL 1085008, at *2 (W.D. La. March 23, 2011) (finding 21 hours reasonable for legal research, writing and filing motion to remand and reply, but finding requested hourly rate

unreasonable given prevailing market rates in local area, and reducing billable rate to $150); *Fiume Indus., Inc. v. Am. Express Travel Related Servs. Co., Inc.*, No. 4:09-CV-591, 2009 WL 4667542, at *5 (S.D. Tex. Dec. 1, 2009) (finding six hours reasonable).

### 2. The fee request should be reduced for work that could be performed by non-attorneys, and clerical and administrative tasks are part of overhead and should not be billed.

Included in his calculation of fees attributable to the motion to remand, Mr. Mitchell indicates that he spent .8 hours drafting a notice of appearance for J. Woodfill and drafting pro hac vice motions for J. Mitchell and J. Saenz. Dkt 20-5, at p. 2 of 7. When determining a reasonable attorney fee, the court should consider whether the work performed was "legal work in the strict sense," or was merely clerical work that happened to be performed by a lawyer. *Johnson*, 488 F.2d at 717. "[I]nvestigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers, but which a lawyer may do because he has no other help available . . . may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it." *Id*. Preparing a routine motion for admission *pro hac vice* or notice of appearance does not require the skills of a United States Supreme Court practitioner, but can be performed by a paralegal. Such work cannot command an attorney hourly rate, and certainly not a $695 per hour rate.

Additionally, Mr. Mitchell wishes to bill the City 2.6 hours for "assembl[ing] exhibits and writ[ing] table of contents." Dkt 20-5 at p. 3 of 7. Such tasks are clerical, secretarial, or administrative work, and should not be billed at all as they are part of office overhead.[5]

Finally, the City should not be required to pay attorneys' fees consisting of 17.9 hours for a reply brief that was never filed. *See* Dkt 20-5, p. 4 of 7.

### 3.   Plaintiffs have failed to exercise billing judgment in their fee request.

A fee applicant "[is] charged with the burden of showing the reasonableness of the hours [it] bill[s] and, accordingly, [is] charged with proving that [it] exercised billing judgment." *Richards*, 2017 WL 3017231 at * 6 (quoting *Walker*, 99 F.3d at 769). "Billing judgment 'refers to the usual practice of law firms in writing off unproductive, excessive, or redundant hours[, and fee applicants] submitting fee requests are *required* to exercise billing judgment." *Id.*

Here, the only application of any billing judgment consists of writing off .7 hours for emailing an attorneys' fees witness, and .9 hours to "[c]ode brief and generate tables on fee application." Coding a brief and generating tables are clerical duties that should not be billed in any event, as they are clerical in nature.

---

[5] *See Walker*, 99 F.3d at 770-71; *Reyes*, 2007 WL2571905, at *3 (court should consider whether the work performed was legal work in a strict sense or was merely clerical work that happened to be performed by a lawyer.)

There is no indication that duplicative time or excessive hours were written off in any way.

**D.     Application of the *Johnson* Factors**

The next step in the lodestar method is adjustment to the lodestar by applying the *Johnson* factors.[6] Most of the *Johnson* factors are briefly addressed in the discussion above. However, the twelfth factor, awards in similar cases, deserves examination here.

A review of other cases in this Circuit in which attorneys' fees were awarded under 28 U.S.C. § 1447(c) illustrates the excessive nature of Plaintiffs' fee request. For example, in *Fiume Industries, Inc.*, 2009 WL 4667542, at *5-6, the court discussed the lodestar method and awarded $1,200 on a motion for remand. The court noted that plaintiff's attorney had been practicing since 1986 and had a billing rate of $200 per hour. The attorney had spent six hours on the case, including preparing the motion for remand. Similarly, in *Richards*, 2017 WL 3017231, at * 6, the court awarded $2,932.50 in attorneys' fees on a motion

---

[6] The *Johnson* factors are: (1) the time and labor involved; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of counsel; (10) the undesirability of the case; (11) the nature and length of the professional relationship between the attorney and the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

for remand. In that case, the court reduced the requested amount by 15% for billing judgment, for failing to write off unproductive, excessive or redundant hours. *See also Decatur Hosp. Auth.*, 854 F.3d at 295 (upholding attorneys' fees award of $14,500 on motion to remand); *Blackburn*, 2016 WL 791046 (awarding $3,932.52 in attorneys' fees on motion for remand); *McMullen v. Cain*, No. A-16-CA-716-LY, 2016 WL 4703753 (W.D. Tex. 2016) (awarding $5,000 in attorneys' fees for motion to remand); *Lotte Chem.*, 2014 WL 7151569 (reducing requested fees and awarding fees in the amount of $14,625); *Blanco v. Equable*, 2012 WL 2155005 (awarding $4,000 in attorneys' fees for motion to remand); *Charles v. Viator*, 2011 WL 1085008 (awarding $3,150 in attorneys' fees for remand); *Reyes*, 2007 WL 2571905 (E.D. La. 2007) (awarding $6,059.30 in attorneys' fees on remand).

## E.    Motion for Reconsideration

Respectfully, Defendants move this Court to reconsider its order awarding attorneys' fees for the remand of this case. There is no automatic entitlement to an award of attorneys' fees upon remand under § 1447(c). *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000). "If fee shifting were automatic, defendants might choose to exercise this right only in cases where the right to remove was obvious." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005); *see Wolf v. Kennedy*, 574 F.3d 406, 411 (7th Cir. 2009). The *Martin* court noted

17

that Congress would not have conferred a right to remove and then discouraged its use in all but the most obvious cases. *Martin*, 546 U.S. at 140. Instead, the court looks to the objective merits of the defendant's case at the time of removal. *Id.* Regardless of whether the removal was made in subjective good faith, the court may still deny attorneys' fees if "the defendant had objectively reasonable grounds to believe the removal was legally proper." *Valdez*, 199 F.3d at 292-93.

### 1.    The City had an objectively reasonable basis for concluding that its removal was timely.

Defendants had objectively reasonable grounds to believe that the timing of their removal was legally proper here. Plaintiffs' amended pleadings and proposed order, the "other documents" which the City reasonably believed gave rise to a new right to remove, were filed in the trial court while an automatic, statutory stay of the trial proceeding was in effect while the case was on appeal. No mandate from the Texas Supreme Court had issued and the City had indicated its intention to pursue a writ of certiorari to the U.S. Supreme Court.

Despite extensive research, the City could locate only one case analogous to this one, in which a lawsuit was removed during the pendency of an appeal where no statute expressly permitted removal from an appellate court. In that case, *Victoria Palms Resort v. City of Donna*, 234 Fed. App'x 179, 179-80 (5th Cir. 2007), the Fifth Circuit, in an opinion authored by Judge Edith Jones, held that a case on appeal is *not* ripe for removal and cannot be removed until it is returned

to the trial court by the issuance of the appellate court's mandate. The Fifth Circuit distinguished a special choice of venue statute, expressly applicable only to the FDIC, that allows it to remove a case to the federal courts whether the case is pending in the trial or appellate courts. It distinguished *Meyerland Co. v. F.D.I.C.*, 848 S.W.2d 82, 83 (Tex. 1993), which was decided under the FDIC statute. The Fifth Circuit has expressly refused to distinguish or cast doubt upon the holding in *Victoria Palms* when faced with the opportunity to do so.[7]

Because Defendants did not reasonably believe that Fifth Circuit law would permit them to remove during the pendency of the state court appeal, Defendants were required to wait until the appeal was exhausted and the mandate issued. Following *Victoria Palms*, the City removed this case within days of the issuance of the Texas Supreme Court's mandate. The City had an objectively reasonable basis for removing this case when it did and "clearly established law did not foreclose" the timing of the City's removal. *Lott v. Pfizer, Inc.*, 492 F.3d 789, 793 (7th Cir. 2007) (emphasis supplied). To the contrary, the only apposite law available *required* the City to proceed as it did.

---

[7] *See Oviedo v. Hallbauer*, 655 F.3d 419, 422 (5th Cir. 2011). *Cf. Victoria Palms*, 234 Fed. App'x at 180 (holding that *Meyerland* and similar cases decided under § 1819(b)(2)(B) apply only to that statute).

In cases where the law was similarly unsettled, courts have found that even though remand was necessary, attorneys' fees were inappropriate because the Defendant had objectively reasonable grounds to believe that removal was proper. *See, e.g.*, *Tovar v. Kaplan Higher Educ. Corp.*, 481 F. Supp. 2d 751, 757 (W.D. Tex. 2007) (cases appeared to decide issue underlying removal in both the negative and affirmative; Defendant may have had objectively reasonable grounds to believe that removal was legally proper and award of attorneys' fees would be inappropriate). Defendants, therefore, respectfully request that the Court reconsider its order that Plaintiffs are entitled to attorneys' fees for an improvident removal.

### 2. The City had an objectively reasonable basis for concluding that issue and claim preclusion did not apply or were not satisfied with regard to their grounds for removal.

In seeking remand, Plaintiffs did not cite a single case to support their argument that the City's second removal was somehow barred by the doctrines of claim or issue preclusion, let alone that the City's removal was objectively unreasonable on that basis.[8] Consequently, clearly established law did not foreclose the City's basis for removal. *Lott*, 492 F.3d at 793.

---

[8] The cases Plaintiffs cite in support of their arguments, *Allen v. McCurry*, 449 U.S 90, 94 (1980) (a criminal case to which § 1446 does not apply), and *Brown v. Felsen*, 442 U.S. 127 (1979) (a bankruptcy case), do not address removal. *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 492 (5th Cir. 1996), strongly supports *the City's* arguments here.

Instead, the City had an objectively reasonable basis on which to believe that *the doctrine of res judicata did not apply to its removal*. While "[t]he Fifth Circuit recognizes a defendant's right to seek subsequent removals after remand,"[9] a subsequent removal cannot be based upon the same ground—that is, *the same "pleading or event that made the case removable*." *S.W.S. Erectors*, 72 F.3d at 492. However, "[i]f the defendant raises a new factual basis, the new factual basis is not deemed adjudicated with the [prior] remand order and, therefore, *is not barred by res judicata*." *Id.* at 493 (emphasis supplied); *Weaver v. Zurich Ins. Co.*, CIV.A. 4:11-1095, 2011 WL 4007883, at *2 (S.D. Tex. Sept. 7, 2011).

In this case, the "different factual basis" derives from Plaintiffs' amended pleading and other *new filings* in a *new case* in which Plaintiff expressly sought *affirmative relief* requiring resolution of federal questions.[10] Plaintiffs also

---

[9] *See also Browning v. Navarro*, 743 F.2d 1069, 1079-80, n.29 (5th Cir. 1984) (second removal petitions are permitted). "By adding the second paragraph of § 1446(b), Congress intended that a party be permitted successive removals." *One Sylvan Rd. N. Assocs. v. Lark Int'l, Ltd.*, 889 F. Supp. 60, 62, 63 (D. Conn. 1995) (cited in *S.W.S. Erectors*, 72 F.3d at 493).

[10] Plaintiffs are seeking a declaration that federal law and the U.S. Constitution confer upon the Mayor and City officials "*no authority to disregard state law.*" In their proposed order, Plaintiffs seek a declaration enjoining the Mayor "and anyone else in active concert or participation with him" from violating any provision of state law based on their personal beliefs that the *law violates the Constitution of the United States or federal law* .... In addition, their proposed order declares that "the city must comply with *Obergefell* and *Pavan* by withdrawing spousal benefits from all city employees." Finally, Plaintiffs seek a declaration that *Obergefell* is not retroactive. Thus, this Court cannot say, as Judge Rosenthal did in 2014, that the

admitted that their own state-law claims raise directly or require resolution of important federal questions. Remand Motion, at 12-13. Consequently, the City could reasonably believe that the doctrine of res judicata is not even implicated here.

The same is true of collateral estoppel. Plaintiffs sought its rare, *offensive* use here. Although four conditions must be met before collateral estoppel may be applied to bar re-litigation of an issue previously decided by a court of competent jurisdiction, *they made no attempt to meet any of them.* The first is that the issue under consideration is identical to that litigated in the prior action; however, *Plaintiffs did not attach any prior pleadings* to provide this Court with any basis for comparison. The second-requirement, that the issue was fully and vigorously litigated in the prior action, also could not be met here. The Supreme Court's decisions in *Obergefell* and *Pavan*, decided *after* Judge Rosenthal's 2014 remand, profoundly changed the issues and circumstances here. Moreover, Judge Rosenthal expressly refused to rule on the *Grable/Singh* exception in the prior litigation with regard to different pleadings.[11] As a result, the issues on remand here were not litigated in the prior removal/remand. It was, therefore,

---

"federal-law issue is not raised by the plaintiffs' complaint, and is instead asserted as a defense." *Pidgeon v. Parker*, 46 F. Supp. 3d 692, 700 (S.D. Tex. 2014).

[11] *Pidgeon v. Parker*, 46 F. Supp. 3d at 700 (emphasis supplied). Her decision also demonstrates that ruling on the *Grable/Singh* exception was not essential to the Court's 2014 remand.

objectively reasonable for the City to have concluded that collateral estoppel did not apply to bar its removal here.

### 3. The City had an objectively reasonable basis to conclude that plaintiffs' amended pleading and "other papers" presented a question of federal and/or constitutional law.

In their Amended Petition and other papers, Plaintiffs sought *affirmative relief* which required resolution of federal questions. To resolve Plaintiffs' amended claims and award them the relief they seek, the courts must determine the federal questions of the scope of the U.S. Constitution's protections for same-sex marriage, the reach of the Supreme Court's decisions in *Obergefell*, *Pavan*, and *Windsor*, and the requirements of the PHSA. The City, therefore, asserted federal question jurisdiction under an exception to the well-pleaded complaint rule that allows federal-question jurisdiction "[to] lie over state-law claims that implicate significant federal issues."[12] Under the *Grable/Singh* exception, "[t]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally-approved balance of federal and state judicial responsibilities."[13]

---

[12] *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) (citing *Hopkins v. Walker*, 244 U.S. 486, 490-91 (1917)).

[13] *Grable*, 545 U.S. at 313.

In its Response to Plaintiffs' Remand Motion, the City carefully set out how each of its four requirements was met here, and how resolution of the federal issues was necessary to resolve Plaintiffs' claims. The remaining *Grable/Singh* factors were easily met in a case that is governed by three U.S. Supreme Court cases. The City, therefore, had an objectively reasonable basis to conclude that the exception applied here.

## V.   CONCLUSION

Because Plaintiffs amended their state court petition and papers during appeal to seek relief, for the first time, on a federal question, and because the Fifth Circuit has determined that a case on appeal is not ripe for removal until the appeal is complete, Defendants had objectively reasonable grounds to believe that removal was proper. Therefore, Defendants respectfully move the Court to reconsider awarding attorneys' fees. In the alternative, Defendants respectfully request that any award of attorneys' fees be held to a maximum of $15,000, consistent with other attorney fees awards under 28 U.S.C. § 1447(c) where cases were remanded in this Circuit. Because the billing rates requested for Mr. Mitchell are more than double the prevailing market rate charged in Houston for similar work, and because the billing records demonstrate numerous examples of unnecessary and duplicative work, excessive hours billed, and attorney billing rate charges for clerical and administrative work, the

City respectfully requests that the charges and hourly rates for the attorneys be reduced to reasonable amounts and that the total hours expended be significantly reduced in an amount to be determined by the Court, but for a total of no more than $15,000.

Respectfully submitted,

**RONALD C. LEWIS**
**City Attorney**

By:  *s/ Patricia L. Casey*
   Patricia L. Casey
   Sr. Assistant City Attorney
   State Bar No.:  03959075
   Fed I.D.: 8001
   CITY OF HOUSTON LEGAL
   DEPARTMENT
   900 Bagby, 4th Floor
   Houston, Texas 77002
   832.393.6302 -Telephone
   832.393.6259 - Facsimile
   pat.casey@houstontx.gov
   ***Attorney in Charge***

Of Counsel:
Judith L. Ramsey
Section Chief, Gen'l Litig. Section
Sr. Assistant City Attorney
State Bar No.: 16519550
Fed I.D.: 1124189
832.393.6468 - Telephone
judith.ramsey@houstontx.gov

Collyn A. Peddie
Sr. Assistant City Attorney
State Bar No.:  15707300

Fed I.D.: 843
832.393.6463 - Telephone
collyn.peddie@houstontx.gov

Suzanne R. Chauvin
Sr. Assistant City Attorney
State Bar No.: 04160600
Fed. I.D.: 14512
832-393-6219 – Telephone
suzanne.chauvin@houstontx.gov

***Attorneys for Defendants,***
***Mayor Sylvester Turner and City of Houston***

## CERTIFICATE OF CONFERENCE

I hereby certify that on April 27, 2018, I corresponded via email with counsel for Plaintiff, Jonathan Mitchell, regarding the issues raised in the foregoing Motion for Reconsideration. Mr. Mitchell advised the undersigned that he is opposed to the motion.

*/s/ Suzanne R. Chauvin*
Suzanne R. Chauvin

## CERTIFICATE OF SERVICE

This Pleading was served in compliance with the *Federal Rules of Civil Procedure* on the 27th day of April, 2018, to all attorneys of record.

***Via Electronic Service, Electronic Mail and/or Certified Mail, RRR.***

Jared R. Woodfill
State Bar No.: 00788715
Fed. Id.:  17069
WOODFILL LAW FIRM, PC
3 Riverway, Suite 750
Houston, Texas 77056
713.751.3080 – Telephone
713.751.3058 - Facsimile
jwoodfill@woodfilllaw.com

Jonathan M. Saenz
State Bar No.: 24041845
TEXAS VALUES
900 Congress Avenue, Suite 220
Austin, Texas 78701
512.478.2220 - Telephone
jsaenz@txvalues.org

Jonathan F. Mitchell
State Bar No. 24075463
559 Nathan Abbott Way
Stanford, CA 94305
650.723.1397
jfmitche@stanford.edu

***Attorneys for Plaintiffs,***
***Jack Pidgeon & Larry Hicks***

*/s/   Patricia L. Casey*
Patricia L. Casey

27